CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

MICHAEL G. LAGRAMA (CABN 252734)
Assistant United States Attorney

     450 Golden Gate Avenue, Box 36055
     San Francisco, California 94102-3495
     Telephone: (415) 436-7241
     Email: Michael.Lagrama@usdoj.gov

Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:25-CR-00353-MMC |
|     Plaintiff, | **GOVERNMENT'S MOTION FOR JOINT CHANGE OF PLEA AND SENTENCING AND SENTENCING MEMORANDUM** |
|   v. | |
| ANGEL CARRANZA, | Hearing Date:  November 5, 2025 |
|     Defendant. | Hearing Time:  2:15 P.m. |
| | Judge:        Hon. Maxine M. Chesney |
| | Court:        Courtroom 7; 19th Floor |

### I.    OVERVIEW

    The United States and defendant Angel Carranza jointly request that the Court accept the proposed plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). Carranza is subject to a Guidelines sentence of 8-14 months. However, given that Carranza swiftly took responsibility for his drug offense in this case, and because he has no prior arrests or convictions, a time-served sentence plus one court day is an appropriate sentence.

    This case is part of the United States Attorney's Office's efforts to disrupt the fentanyl and methamphetamine open-air drug market that exists in San Francisco's Tenderloin District (hereafter, "the Tenderloin") through a combination of enforcement and dispositions that prevent drug traffickers

from returning to the Tenderloin.  These efforts will occasionally take the form, as here, of prosecution of street-level dealing where Carranza has no criminal history, leading the government to seek expedited prosecution, obtain a federal conviction, and enforce a strict three-year, stay-away order that immediately excludes convicted drug traffickers from returning to the Tenderloin and thus dissuades them from engaging in further drug trafficking.  For the reasons set forth below, the government and Carranza believe that a below-Guidelines sentence—accounting for the time already served plus one court day in this expedited prosecution—alongside this geographical restriction meet the statutory requirements of Section 3553(a).

## II.    BACKGROUND

On or about October 14, 2025, at around 11:05 p.m., Carranza and an unknown co-conspirator were selling drugs in the Tenderloin District of San Francisco near 1266 Market Street.  At the time of his arrest, Carranza had approximately 12.6 gross grams of fentanyl on his person, and the fentanyl was packaged in small plastic baggies.  Carranza also had $199.

After his arrest on October 14, 2025, Carranza was charged by complaint and made his initial appearance in this case on October 16, 2025.  He waived detention findings at his initial appearance and has remained in custody since then.  On October 27, 2025, he was arraigned on an Information charging him with one count of possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).  In the proposed plea agreement, Carranza acknowledges that he knew (i) the substance he possessed contained fentanyl; and (ii) that he intended to distribute it to another person.  See Plea Agreement ¶ 2.  He further acknowledges that his conviction in this case "makes it practically inevitable and a virtual certainty that [he] will be removed or deported from the United States."  Plea Agreement ¶ 1.

Carranza is a 23-year-old Honduran national.  According to the Department of Homeland Security, Carranza lacks immigration status and/or is removable under U.S. immigration law.  There is an immigration detainer in place such that the government expects Carranza will be transferred to the custody of the Department of Homeland Security for removal proceedings following his release from the custody of the U.S. Marshals Service in this case.

### III.    MOTION FOR JOINT CHANGE OF PLEA AND SENTENCING

To advance the goal of this accelerated disposition, the parties jointly move the Court to proceed to sentencing without a presentence investigation report during the same hearing as Carranza's change of plea, or as shortly thereafter as is practicable.  This will achieve the expedited proceeding contemplated by both parties.  The Court may sentence without a presentence investigation report if it "finds that the information in the record enables it to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553" and "explains its finding on the record."  Fed. R. Crim. Proc. 32(c)(1)(A)(ii); *see also* Fed. R. Crim. P. 32(b)(1); U.S.S.G. § 6A1.1; Crim. L.R. 32-1(b).  The government respectfully submits that the record here—including the criminal complaint, the plea agreement, and the parties' sentencing memoranda, which each and collectively detail the offense conduct and other factors relevant under Section 3553—enable the Court to meaningfully exercise its sentencing authority under Section 3553 and to proceed to sentencing without the need for a presentence investigation report.  The parties request that the Court explain its findings and the sufficiency of the record at sentencing.

### IV.    APPLICABLE GUIDELINES RANGE AND CRIMINAL HISTORY CATEGORY

The government calculates the following Guidelines range:

a.    Base Offense Level, U.S.S.G. §2D1.1(a)(5), (c)(12):                16
(At least 8 grams but less than 16 gram of fentanyl)

b.    Acceptance of Responsibility:                                       -3

If I meet the requirements of U.S.S.G. § 3E1.1, I may be entitled to a three-level reduction for acceptance of responsibility, provided that I forthrightly admit my guilt, cooperate with the Court and the Probation Office in any presentence investigation ordered by the Court, and continue to manifest an acceptance of responsibility through and including the time of sentencing.

c.    Zero-Point Offender Adjustment, U.S.S.G. § 4C1.1                    -2

d.    Adjusted Offense Level:                                             11

1    The government calculates a Criminal History Category of I (0 points).  An Adjusted Offense

2    Level of 11 and a Criminal History Category of I yields an advisory Guidelines range of 8–14 months.

3    *See* U.S.S.G. ch. 5, pt. A.  The government also seeks a three-year term of supervised release (as

4    required by statute) and imposition of the mandatory $100 special assessment.

5                              **V.    SENTENCING RECOMMENDATION**

6    Consistent with the plea agreement in this case, the parties jointly request a sentence of time

7    served plus one court day and a three-year term of supervised release that includes, among other things,

8    a special condition that Carranza may not re-enter the Tenderloin during the period of supervised

9    release.  This stay-away condition is a critical component of the plea bargain because it prevents

10   Carranza from returning to the Tenderloin, from which his drug trafficking conviction arises.

11   **A.    Section 3553 Factors**

12   **1.    *Nature and Circumstances of Offense; History and Characteristics of Defendant***

13   The nature and circumstances of the offense, and Carranza's history and characteristics, warrant

14   a sentence of time-served plus one court day.  Here, Carranza intended to sell or distribute an extremely

15   lethal drug (*i.e.*, fentanyl), and thereby, endangered the lives of others and detrimentally impacted the

16   wider community.  Nevertheless, Carranza swiftly took responsibility for his drug offense.  He also has

17   no prior arrests or criminal convictions, which places him in Criminal History Category I.  Thus, he has

18   no reported history of violence or unlawful use of a weapon.  Further, Carranza does not have a history

19   of drug dealing.  Rather, it appears that Carranza had only recently started selling drugs and was doing

20   so to make enough money to return to his wife and son back in Louisiana.  Based on these particular

21   facts, a sentence of time-served plus one court day is appropriate.

22   **2.    *Need for Sentence to Reflect the Seriousness of the Offense, to Promote Respect for
        the Law, and to Provide Just Punishment; to Afford Adequate Deterrence to
        Criminal Conduct; and to Protect the Public from Further Crimes of the Defendant***

23

24   The Tenderloin, defined in the plea agreement to include the historic Tenderloin District and

25   much of the South of Market neighborhood, is in crisis.  As the Court is well aware, the proliferation of

26   highly addictive, potent, and inexpensive synthetic controlled substances, like fentanyl and

27   methamphetamine, has exacted a crushing human toll in the Tenderloin.  The Tenderloin open-air drug

28   market not only creates suffering for its participants—including staggering amounts of overdoses and

1  fatalities—but also dire externalities for the people and families that live and work in the Tenderloin, as

2  well as for San Francisco itself.  The effects of Carranza's offense, considered as an individual act, are

3  destructive; the effects of the offense, considered in the aggregate, are catastrophic.

4       The applicable Guidelines range for Carranza's conduct is 8–14 months in light of the relevant

5  conduct and amount (and variety) of controlled substances he possessed at the time of his arrest.  The

6  proposed sentence—of time served plus one day and a three-year term of supervised release with a

7  highly-restrictive geographic restriction—is a downward variance from the applicable Guidelines range

8  but one that the government submits is appropriate given Carranza's status as a street-level drug dealer,

9  the unique problem facing the Tenderloin, and the need for deterrence and protection of the public.

10       To benefit from an agreement by the government to recommend a sentence of time served plus

11  one day, Carranza waived detention and has been in continuous custody since his arrest on federal

12  charges.  He also waived indictment, agreed promptly to plead guilty and proceed to sentencing, and

13  agreed to be subject to a three-year term of supervised release that includes a strict stay-away condition

14  from the Tenderloin.  Carranza is on notice that a return to the Tenderloin (in violation of his supervised

15  release terms) will invite new charges and/or supervised release violations.  He is also aware that it is

16  virtually certain that he will be deported following the conclusion of his case.

17       This disposition results in a drug-trafficking conviction within weeks of arrest (not months or

18  years), immediate separation of Carranza from the Tenderloin, and prevention of his from returning to

19  the Tenderloin. The speed with which this case has moved will free up other government resources to

20  prosecute additional federal crimes, including in the Tenderloin.  And with this federal conviction,

21  Carranza is now on notice that any subsequent criminal conduct will be met with the government

22  advocating for a far greater sentence.

23      **B.**    **The Necessity of the Proposed Special Conditions of Supervised Release**

24       A three-year term of supervised release is required by statute for the drug-trafficking offense to

25  which Carranza has agreed to plead guilty.  *See* 21 U.S.C. § 841(b)(1)(C).  It is also essential to this

26  disposition.  In particular, the special stay-away condition of release allows the government to accomplish

27  one of its primary goals related to protection of the public: to immediately separate drug dealers from

28  the Tenderloin (given that Carranza has remained in custody since he was arrested) and to effect a strict

stay-away from the Tenderloin for three years.  Under the terms of supervised release as contemplated herein, not only will Carranza be prohibited from engaging in any further unlawful conduct, he will also be prohibited from entering the Tenderloin without prior approval of the Probation Office:

> Unless authorized by U.S. Probation, the defendant shall neither enter nor be present in the area in San Francisco bordered on the west by Laguna Street, on the north by Sutter Street, on the east by Powell Street and 5th Street, and on the south by Folsom Street.

Plea Agreement ¶ 10.  Combined with a search condition with or without suspicion—to which the parties have also agreed, *see id.*—the goals of Section 3553(a), including protection of the public and meaningful deterrence, will be significantly advanced by the terms of this agreement, and this prosecution's impact on illicit drug trafficking in the Tenderloin will be both immediate and sustained. The stay-away condition is also necessary given the particular circumstances of Tenderloin drug trafficking: defendants previously convicted of selling drugs in the Tenderloin are prone to recidivate, and they frequently return to the Tenderloin to do so, even following removal from the United States. *See, e.g.*, *United States v. Erazo-Centeno*, No. 3:23-cr-00002 CRB; *United States v. Gamez-Arguilio*, No. 3:17-cr-00553 CRB.

On the facts of this particular case, and in light of the provisions of the parties' plea agreement, the government respectfully submits that the disposition recommended herein is sufficient but not greater than necessary to accomplish the goals of Section 3553(a).

## VI.    CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court sentence Carranza to time served plus one court day, to be followed by a term of supervised release of three years, to include the special conditions of supervision agreed to by the parties in the plea agreement, including the stay-away condition from the Tenderloin.

DATED:  October 29, 2025                          Respectfully Submitted,

                                                  CRAIG H. MISSAKIAN
                                                  United States Attorney


                                                  */s/ Michael G. Lagrama*
                                                  MICHAEL G. LAGRAMA
                                                  Assistant United States Attorney